NOT DESIGNATED FOR PUBLICATION

No. 115,405

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

RONALD AROWCAVAGE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Geary District Court; RYAN W. ROSAUER, judge. Opinion filed November 10, 2016. Reversed.

*Paul D. Cramm*, of Paul D. Cramm, Chartered, of Overland Park, for appellant.

*Tony Cruz*, assistant county attorney, *Steven L. Opat*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BUSER, P.J., ATCHESON and POWELL, JJ.

POWELL, J.: Ronald Arowcavage appeals his conviction of criminal transportation of drug proceeds, claiming that there was no evidence he was involved in illegal drug activities in Kansas. We agree and reverse Arowcavage's conviction.

FACTUAL AND PROCEDURAL BACKGROUND

On April 6, 2015, Junction City Police K-9 Officer Nicholas Blake stopped Arowcavage for speeding on I-70 in Geary County, Kansas. Blake told Arowcavage why

1

he had been stopped and asked for his driver's license and vehicle documents. After Arowcavage produced those documents, Blake asked Arowcavage to come back to his patrol car, mentioning that he was likely only going to issue Arowcavage a warning citation. During his interaction with Blake, Arowcavage appeared extremely nervous. When he handed his driver's license and vehicle documents to Blake, his hands were visibly shaking, and Blake could even see his carotid artery pulse. According to Blake, while most people are nervous when interacting with police officers, their nervousness usually goes away, especially when they learn they are only going to get a warning. Arowcavage's nervousness never went away.

While he sat in Blake's patrol car, Arowcavage stated that he had flown from California to Pennsylvania and had rented a car to drive back to California. As Blake waited for dispatch to confirm that Arowcavage had a valid driver's license, he walked his K-9 partner around Arowcavage's vehicle. The dog indicated that a strong drug odor was coming from the car. When Blake informed Arowcavage that the dog detected drug odor from the car, Arowcavage's response was "Hmm." Blake called for back-up and asked Arowcavage if there was any marijuana, methamphetamine, heroin, cocaine, ecstasy, or a large amount of currency in the car. Arowcavage told Blake that the car did not contain drugs or a large amount of money.

Blake and Lieutenant Justin Stopper of the Geary County Sheriff's Office searched Arowcavage's vehicle. The officers found vacuum-sealed packages of rubber-banded money in the zipper liners of two suitcases and rubber-banded money in a duffel bag. When the vacuum-sealed packages were opened, a strong odor of raw marijuana was present. The same was true for the money found in the duffel bag. More money was found in Arowcavage's pocket and in the car's center console.

Blake collected a total of $266,268 cash: $32 from the center console; $680 from Arowcavage's pocket; $15,801 from the duffel bag; and $249,755 from the vacuum-

2

sealed packages in the suitcases. Blake used a cash counter to count the money and found some residue in the hopper after counting the money. He sent the residue to the Kansas Bureau of Investigation, and the residue tested positive for tetrahydrocannabinol, the active ingredient in marijuana. Before invoking his right to remain silent, Arowcavage told Blake that the money in the duffel bag was his life savings.

The State charged Arowcavage with one count of criminal transportation of drug proceeds or, in the alternative, criminal transfer of drug proceeds and one count of possession of marijuana. Arowcavage pleaded not guilty and waived his right to a jury trial.

At trial, both Blake and Stopper testified that the money recovered smelled like marijuana. The residue in the bill counter used to count the money had tested positive for the active ingredient in marijuana. Blake further testified that rubber-banded, vacuum-sealed bags of money was a significant factor in a drug distribution investigation because vacuum-sealed bags were used to thwart detection by drug dogs. Of the approximately 100 major drug seizures in which Blake had been involved, about half included drug proceeds, and rubber-banded, vacuum-sealed bags of money were never found to be from a legitimate source or from legitimate means.

According to Blake's investigation, Arowcavage apparently purchased his plane ticket 1 or 2 days before flying to Pennsylvania, which was just a few days before he was stopped by Blake on his way back to California. Blake found evidence of similar short, last-minute trips where Arowcavage would fly to the East Coast and then rent a car to drive back to California. Blake also found evidence of other car rentals, a hotel reservation in New Jersey, and a cancelled hotel reservation in Colorado. Blake testified that, based on his experience, the type of travel Arowcavage displayed was common in drug distribution. A cellphone was also recovered from Arowcavage's vehicle, and Blake applied for and received a search warrant to search the phone, knowing that cellphones

3

are often the way drug suppliers, drug dealers, and other people involved in drug distribution communicate. Several communications were discovered on the phone that led Blake to believe, based on his training and experience, that Arowcavage was involved in marijuana distribution.

Sergeant Jason Lucas of the Sonoma County, California, Sheriff's Office also testified. After executing a search warrant on Arowcavage's house in California, Lucas found 13 pounds of marijuana, digital scales, unused plastic bags, plain plastic bags for vacuum sealing, a .22 caliber rifle, and evidence of a previous marijuana growing operation. According to Lucas, marijuana is undoubtedly transported out of California— by cars, trucks, planes, and various commercial mail carriers. During the search he found photos of an apparent shipment to a Pennsylvania address. Based on his training and experience, Lucas believed that notes on the shipping label indicated that the box contained 8 pounds of different strains of marijuana.

Lucas also found receipts indicative of a marijuana growing operation and collected financial documents, including bank records, various bills, and credit card statements. After conducting a partial financial investigation, Lucas concluded that Arowcavage was living beyond his means, based on his known income and expenses. According to Lucas, the evidence discovered during the search of Arowcavage's house was consistent with marijuana distribution. He also agreed with Blake that vacuum-sealed bags of money were consistent with drug proceeds.

After the State rested, Arowcavage moved for judgment of acquittal, making many of the same arguments that he makes on appeal. The district court, viewing the evidence in the light most favorable to the prosecution, found that the State had met its burden as to the three counts and could not dismiss the case at that time. Arowcavage did not present any evidence.

Applying the reasonable doubt standard at the close of the case, the district court found Arowcavage guilty of criminal transportation of drug proceeds and not guilty on the other counts. At sentencing, Arowcavage moved for durational and dispositional departures and objected to the offense's classification as a drug severity level 2 felony. The district court denied the dispositional departure but granted a durational departure and sentenced him to 98 months in prison and 36 months' postrelease supervision.

Arowcavage timely appeals.

### DID THE STATE PRESENT SUFFICIENT EVIDENCE TO FIND AROWCAVAGE GUILTY OF CRIMINAL TRANSPORTATION OF DRUG PROCEEDS?

Arowcavage claims that his conviction was not supported by sufficient evidence primarily because the State failed to prove that the money he had in his possession related in any way to drug crimes that had been or would be committed in Kansas.

When the sufficiency of evidence is challenged in a criminal case, we review "all the evidence in a light most favorable to the prosecution [and] must be convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. [We] do not reweigh the evidence . . . or make witness credibility determinations." *State v. Williams*, 299 Kan. 509, 525, 324 P.3d 1078 (2014). To the extent that statutory interpretation is required, our review is unlimited. *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015).

The district court convicted Arowcavage of only count one, which charged him with violating K.S.A. 2014 Supp. 21-5716(b) (characterized by the State as criminal transportation of drug proceeds), which provides:

5

"It shall be unlawful for any person to distribute, invest, conceal, transport or maintain an interest in or otherwise make available anything of value which that person knows is intended to be used for the purpose of committing or furthering the commission of any crime in K.S.A. 2014 Supp. 21-5701 through 21-5717, and amendments thereto, *or any substantially similar offense from another jurisdiction*." (Emphasis added.)

Under this statute, the State was required to prove that Arowcavage transported currency having a value of at least $100,000 but less than $500,000, a thing of value which Arowcavage knew was intended to be used for the purpose of furthering the commission of drug offenses in Kansas or in other states with substantially similar offenses. See PIK Crim. 4th 57.220. However, as Arowcavage points out and as the State admits, the italicized portion of the statute was left out of the complaint. Therefore, Arowcavage argues, he could only be found guilty if the State proved he was transporting currency which he knew was intended to be used in furthering the commission of drug offenses *in Kansas*. Arowcavage contends there was no evidence of his engaging in any drug activities in Kansas; therefore, there was insufficient evidence to support his conviction. The State does not respond directly to this argument.

It is well established that "[t]he State is bound by the wording of its complaint and limits itself to pursue only that 'version of the offense' or 'theory' of the case at trial." *State v. Haberlein*, 296 Kan. 195, 210-11, 290 P.3d 640 (2012), *cert. denied* 134 S. Ct. 148 (2013). Another panel of this court employed this principle to reverse the defendant's conviction in *State v. Robinson*, 27 Kan. App. 2d 724, 728, 8 P.3d 51 (2000). In *Robinson*, the State charged the defendant with aggravated robbery which required it to prove that the defendant took property from the person or presence of another by force or threat of bodily harm and that the defendant committed the robbery with a dangerous weapon or inflicted bodily harm upon a person during the course of such robbery. See K.S.A. 21-5420(a), (b). However, the charging document only accused the defendant of taking property from the *person* of another. After explaining that the term "person" was a subset of "presence," our court reversed the defendant's conviction because the evidence

6

only showed that the property had been taken from the *presence* of the victim, not the victim's *person*. 27 Kan. App. 2d at 726-28.

Similarly, here there was evidence supporting the State's contention that Arowcavage was engaging in illegal drug distribution in California, Pennsylvania, New Jersey, and Colorado. A search of Arowcavage's house in California revealed large amounts of marijuana, digital scales, unused plastic bags for vacuum sealing, and evidence of a previous marijuana growing operation. There was testimony that Arowcavage shipped or transported marijuana out-of-state to Pennsylvania and other places on the East Coast, as well as evidence of hotel reservations in New Jersey and Colorado. When viewing the evidence in the light most favorable to the State, we find that sufficient evidence was presented for the district court to reasonably infer that (1) Arowcavage was involved in marijuana distribution; (2) one or more marijuana distribution offenses occurred in jurisdictions outside the state of Kansas; and (3) the money found in Arowcavage's rental car related to past or future marijuana distribution offenses. However, there was no evidence that Arowcavage had engaged in or would in the future engage in illegal marijuana distribution efforts in Kansas.

While the crime of criminal transportation of drug proceeds as defined in K.S.A. 2014 Supp. 21-5716(b) includes both in-state and out-of-state illegal drug activity, Arowcavage was charged only with the criminal transportation of drug proceeds to commit or further the commission of drug offenses in Kansas. The evidence presented only showed that Arowcavage engaged in illegal marijuana distribution activities outside of Kansas; therefore, Arowcavage cannot be guilty of the offense as charged. Accordingly, we must reverse his conviction. We have no reason to consider Arowcavage's other arguments and express no opinion as to their merits.

Reversed.